BEFORE THE SECOND DIVISION, JANUARY 18, 1951

**No. 55139.**—The British Industries Corp. *v.* United States, protest 142872–K (New York).

LAWRENCE, Judge:   This protest is directed against the dutiable classification of an item of merchandise imported from England and described on the consular invoice as "864 Dry Shave Razors."   The collector of customs at the port of New York classified the merchandise as articles or wares of metal, not specially provided for, within the provision of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397) and assessed duty thereon at the rate of 45 per centum ad valorem.

In its protest or by amendment thereto, the plaintiff contends that the merchandise is properly dutiable as "razors" at the appropriate rate according to value within the provisions of paragraph 358 of said act (19 U. S. C. § 1001, par. 358), or as machines, not specially provided for, within the scope of paragraph 372 of said act (19 U. S. C. § 1001, par. 372), dutiable at 27½ per centum ad valorem, or as household utensils dutiable at 40 per centum ad valorem in paragraph 339 of said act (19 U. S. C. § 1001, par. 339).

Counsel for the plaintiff in his brief has limited the protest to the claim that the articles should be held properly dutiable as household utensils within the scope of paragraph 339, *supra*, and has abandoned all other claims.

When the case was called for hearing, plaintiff offered in evidence a sample of the article in issue, together with its container, certain printed descriptive material, and a small pictorial booklet which, by a flip of its pages, illustrates the operation of the imported article.   Without objection by counsel for the defendant, said items were received in evidence and marked plaintiff's collective exhibit 1.

Counsel for both parties then entered into the following oral stipulation:

\* \* \*   that Exhibit 1 is composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold or silver.

No other evidence was submitted by either party.

Counsel for the plaintiff in his brief refers to the cases of *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816; *I. W. Rice & Co.* v. *United States*, 24 C. C. P. A. (Customs) 114, T. D. 48415; and *F. W. Woolworth Co.* v. *United States*, 26 C. C. P. A. (Customs) 221, C. A. D. 20, all of which have reference to the judicial interpretation of the words "household utensils" as used in

paragraph 339, *supra*, as including "not only utensils which are used in the maintenance and care of the home, but also those, not more specifically provided for, which are chiefly used in the household by the members thereof collectively for their convenience and comfort." (Note *Rice* case, *supra*, at p. 116.)

It is plaintiff's contention that the dry shave razors in issue are "used for the convenience and comfort of members of the family and the court knows judicially that the principal use of shaving implements is in the home or house."

Whereas certain matters may be judicially recognized as true without the offering of evidence by the party who should ordinarily have done so (Wigmore on Evidence, Third Edition, § 2567), such matters while not clearly delimited are confined generally to facts which are notorious or are bound to be judicially known, such as domestic laws and ordinances, political facts, and notorious miscellaneous facts having to do with commerce, industry, history, natural sciences, and time and distances.

We do not consider as judicially known or as a notorious fact that a new article such as is here in issue, termed a "dry shave razor," is used chiefly in the household for the comfort and convenience of the members thereof.

The plaintiff has directed the court's attention to the following cases as being "most nearly similar to the one at bar." *New York Merchandise Co., Inc.* v. *United States*, 73 Treas. Dec. 1298, Abstract 38680, in which curling irons were held to be household utensils; and *H. Kempner* v. *United States*, 11 Cust. Ct. 173, C. D. 820, and *Strauss-Eckardt Co., Inc.* v. *United States*, 15 Cust. Ct. 267, Abstract 50488, wherein shaving sets consisting of mirrors, soap dishes, and stands, were held to be dutiable as household utensils.

Upon a consideration of those authorities, we find them of no assistance here in determining the question of chief use in the household of dry shave razors. In each of the cited instances, chief use in the household of the articles there in issue was established by the testimony of witnesses. In the case before us, such testimony is lacking.

The dry shave razor in evidence represents a shaving implement quite different in its mechanical structure from the old-fashioned "straight razor." It is more in the nature of the modern "safety razor." The article is composed of a handle, approximately 3 inches in length, to one end of which and at right angles thereto it is evident a cutting edge is provided, protected by an arc-shaped perforated piece of metal, approximately 1 inch by 2 inches in dimensions, which is permitted to roll approximately 180 degrees by a hinged pin affixed to the handle at a point 1 inch from the cutting edge.

The literature which forms a part of plaintiff's collective exhibit 1 describes how a dry shave razor is to be used, and states further—

* * * In addition to serving you as *your main shaving instrument*, it is a marvellously convenient adjunct for travelling, holidays and for incidental "cleaning-up" at odd times. You can take it with you, wherever you go, *in its case*, in your pocket. The razor needs no electricity, no water, no soap, no brush and no replacement blades. * * * [Italics quoted.]

We are unable on the record and exhibit before us to find as a fact, based upon judicial notice or otherwise, that the articles in controversy are chiefly used in the household for the comfort and convenience of the members thereof, and we cannot supply from imagination this deficiency of proof. Moreover, the dry shave razors in issue were made in a foreign country rather than being of domestic manufacture, and for aught we know, they have never been used in this country. Consequently, for us to hold that they are chiefly used in this country in the household or otherwise, in the absence of convincing proof, would be an unjustified exercise of judicial knowledge. We, therefore, cannot sustain the claim of plaintiff for classification of the merchandise as household utensils within the purview of paragraph 339, *supra*.

It appears to us, however, that such articles might properly have been classified as "safety razors" or as "razors," as provided in paragraph 358 of the Tariff Act of 1930, *supra*. In passing, it will be noticed that on the invoice and entry papers the imported articles are referred to variously as "safety razors" and "dry safety razors." According to lexicographic authorities, a "safety razor" is defined as follows:

Funk & Wagnalls New Standard Dictionary of the English Language (1942)—

safety * * * s.-razor, *n.* A razor which, to prevent cutting the skin, is provided with a guard or guards for the blade, the whole being mounted at right angles on a handle.

Webster's New International Dictionary of the English Language, Second Edition, Unabridged (1948)—

safety razor. A razor provided with a guard or guards for the blade to prevent cutting the skin.

Said definitions quite aptly describe the dry shave razors here in issue. However, since the provision for "safety razors" contained in paragraph 358, *supra*, was not invoked, although plaintiff originally had sought but later abandoned the application of the provisions for "razors" therein contained, classification of the controverted merchandise within the scope of said paragraph 358 is not before us for decision.

Upon the foregoing considerations, all claims in the protest are overruled.

Judgment will be entered accordingly.