(C. D. 2000)

CAMARGE TRADING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 28, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: A commodity described in the consular invoice as "Chrome plated Fitall Basket Insert" was classified by the collector of customs as an article in chief value of metal in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

Plaintiff relies upon the claim in its protest that the articles are household or kitchen utensils and should be classified, accordingly, in paragraph 339 of said act (19 U. S. C. § 1001, par. 339), as modified by said trade agreement, supplemented by Presidential proclamation of May 4, 1948, 83 Treas. Dec. 166, T. D. 51909, and subjected to duty at the rate of 15 per centum ad valorem.

The pertinent text of the competing statutes reads as follows:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Other \* \* \* _____ 22½% ad val.

Paragraph 339, as modified, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for \* \* \*, whether or not containing electrical heating elements as constituent parts thereof:

\*     \*     \*     \*     \*     \*     \*

Not plated with platinum, gold, or silver, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other:

Composed wholly or in chief value of brass_____ 15% ad val.

At the trial, the following exhibits were introduced by plaintiff:

Exhibit 1—Sample of the imported merchandise.

Illustrative exhibit 2—A flat circular sink stopper of rubber, 4½ inches in diameter.

Illustrative exhibit 3—An ordinary rubber plug sink stopper, with metal ring attached.

The only witness in the case, Ellis K. Orlowitz, was called by the plaintiff. The substance of his testimony discloses that he is secretary and treasurer of the plaintiff company, engaged in buying and selling "the plumbing products that we import," the business of the company being primarily the "importing and selling of plumbing supplies." He had been familiar with the type of merchandise

represented by exhibit 1 for about 8 or 10 years; had sold it throughout "the entire country"; and had seen it used in his own house, his sister's house, and in other houses. He had seen it used as an insert in a sink drain to control the flow of water, and he had seen it used independently as a strainer to strain ice from a drink and also as "an inverted strainer in the sink for washing vegetables."

The witness explained that the rubber plug on the underside of exhibit 1 is used to control the flow of water, being attached to the plunger in such a manner as to stop water from running out or permitting the water to drain out completely. Exhibits 2 and 3, the witness stated, illustrated other types of articles used as stoppers in sinks to prevent the outflow of water.

Plaintiff contends that the provision for household utensils in paragraph 339, *supra*, should be given a very broad interpretation and that "If articles are utensils within the broadest meaning of that term and if they are used for utilitarian purposes in the household, they should be classified as household utensils," citing various decisions of this court and of our appellate court, among which the following may be noted—

*W. C. Auger et al.* v. *United States*, 73 Treas. Dec. 1229, Abstract 38249—wall brackets.

*F. See On Co.* v. *United States*, 69 Treas. Dec. 1242, Abstract 33795—washbasins.

*B. Altman & Co. et al.* v. *United States*, 73 Treas. Dec. 1277, Abstract 38549—bellpull mountings.

*Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816—vacuum cleaners and floor polishers.

*I. W. Rice & Co.* v. *United States*, 24 C. C. P. A. (Customs) 114, T. D. 48415—atomizers.

Plaintiff also cites various other cases in which a distinction was drawn between a household utensil and a household fixture, the latter term implying "* * * an article that is physically a part of the house or is permanently or physically attached to the house by screws, nails, or other fasteners," citing—

*Fensterer & Ruhe et al.* v. *United States*, 5 Ct. Cust. Appls. 61, T. D. 34096—gas burners.

*U. Fujita & Co. et al.* v. *United States*, 26 C. C. P. A. (Customs) 63, T. D. 49611—door knockers.

*Mayberg* v. *United States*, 65 Treas. Dec. 1333, Abstract 27187—chandeliers and wall bracket lights.

Plaintiff further contends that "Every electrical utensil in a household must make a physical contact with the house before it can be used—it must be plugged in," citing various cases wherein such articles as electric vacuum cleaners, electric bedroom or parlor lamps, and electric broilers were held to be household utensils.

Several of the cases above cited and certain others were considered by this court in *John L. Westland & Son, Inc.* v. *United States*, 35 Cust. Ct. 292, Abstract 59419, wherein the issue presented was the same as here involved. We have examined that case in the light of the present record and find nothing herein which persuades us to depart from the considered reasoning and judgment therein. The exhibit representing the merchandise in the *Westland* case is in the files of the court. We have examined it and observe that it is identical with exhibit 1 in the case now before us. .

We quote as follows from the decision in the *Westland* case—

Counsel for the Government urges that when a strainer, such as that here involved, is inserted into the drain pipe of a sink, it becomes a part of the sink, and as the sink is a fixture, so are its parts * * *

citing cases. Further, the court said—

It seems clear to us that the articles at bar, although in the very broad sense responding to the denomination "utensils," are not such as are provided for as "household utensils" within the purview of said paragraph 339. Those household utensils to which the provision in question refers are articles which possess an individual and independent usefulness as separate entities, whether or not permanently attached to the premises. On the other hand, articles which can not function independently, but become useful only when attached to other fixtures or devices, are not encompassed by the statutory provision for "household utensils." * * *

Obviously, the so-called basket inserts or strainers are designed to fit into a sink drain and, of course, the outlet of a sink must be specially designed to accommodate strainers of this type and, for this reason, a strainer may, and properly, be regarded as part of a sink. Other uses of the commodity testified to by the witness are doubtless exceptional, the primary purpose being to prevent or permit the flow of water from the sink and to sift out particles of material which might otherwise clog the drainpipe.

Upon the record before us and for the reasons so well expressed in the *Westland* case, we find and hold that the sink strainers in controversy are not table, household, or kitchen utensils within the purview of paragraph 339, *supra*.

All claims in the protest are overruled and judgment will issue accordingly.