(C.D. 2145)

M. PRESSNER & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 19, 1960)

*Siegel, Mandell & Davidson* (*David Serko* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

LAWRENCE, Judge: An importation described on the invoices as "Art. No. 2355" "hunting knife w/pig skin sheath wooden handle" was classified by the collector of customs as hunting knives in paragraph 355 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 355), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 1 cent each and 12½ per centum ad valorem.

Plaintiff relies upon its claim that the merchandise should be classified as articles in chief value of metal, not specially provided for, and assessed with duty at the rate of 22½ per centum ad valorem in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305 T.D. 51802.

A sample of the merchandise was received in evidence as exhibit 1, and it was stipulated that it is in chief value of metal, other than gold, lead, silver, platinum, or tin plate, not plated with platinum, gold, or silver, or colored with gold lacquer. The article was invoiced at $3.78 per gross.

The pertinent text of the statutes invoked herein reads as follows:
Paragraph 355, as modified, *supra*:

Table, butchers', carving, cooks', hunting, kitchen, bread, cake, pie, slicing, cigar, butter, vegetable, fruit, cheese, canning, fish, carpenters' bench, curriers', drawing, farriers', fleshing, hay, sugar-beet, beet-topping, tanners', plumbers', painters' palette, artists', shoe, and similar knives, forks, and steels, and cleavers, all the foregoing, finished or unfinished, not specially provided for:

  *   *   *   *   *   *   *

  With handles of wood or wood and steel:
   Specially designed for other than household, kitchen, or butchers' use, and under 4 inches long, exclusive of handle_____ 1¢ each and 12½% ad val.

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  *   *   *   *   *   *   *

  Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold or silver, or colored with gold lacquer:
   Woven wire fencing * * *

  *   *   *   *   *   *   *

   Other (except slide fasteners and parts thereof)\_\_\_22½% ad val.

Two witnesses testified at the hearing, both of whom were called by plaintiff.

Gideon Colter, a salesman in the employ of the plaintiff company, testified in substance as follows:

M. Pressner & Co. is an importer of novelties, toys, and china. As a salesman for merchandise like exhibit 1, he travels in the midwestern territory of the United States which "Starts in the east in Toledo, as far west as Kansas City; north, Minneapolis, and south, Louisville, Ky." He had seen the article used as a souvenir item, the sheath being "decalled" with the name of the city and state. He had also seen it used occasionally as a letter opener on a desk, but had never seen it used as a knife for cutting purposes. He stated that the merchandise was sold to carnival jobbers, and the carnival trade gave it away as a prize. It is never sold to cutlery dealers.

Colter testified that his company handles knives which are bought and sold as hunting knives, a sample of which was introduced into evidence as exhibit 2.

Marvin Friedberg testified that he was employed as a salesman for William Shaland, importer and manufacturer. His territory as a salesman embraced "the east coast as far down south as Washington, as far west as St. Louis, as far north as Detroit, and then back through New York State."

Friedberg's firm imported an item similar to exhibit 1 which he sold to carnival jobbers throughout the territory above indicated. He had seen the article used at rodeos, carnivals, and circuses as a souvenir item. Friedberg stated that he had never seen it used as a knife, except occasionally he had used it as a letter opener. It was his testimony that he had never seen an item like exhibit 1 in a cutlery store and that he had used an article like exhibit 2, which he regarded as a hunting knife or camping knife. As a boy scout, he had used it "more or less for cutting." The selling price of exhibit 1 in this country was "Anywhere from $9.60 a gross to $10.80 a gross," approximately 7 cents apiece.

Many years ago, our appellate court applied the doctrine that "In classification cases like the one at bar the sample is ofttimes a very potent witness." *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, 356, T.D. 43090, followed in *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, 71, T.D. 44029, and *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, 221, T.D. 45995.

The term "hunting knife" is defined in Webster's New Collegiate Dictionary (1956) as follows—

hunting knife. A large, stout, very sharp knife used to skin and cut up, and sometimes to dispatch, game.

A physical examination of exhibit 1 indicates that it is a rather flimsily constructed item having a blade inserted in a wooden handle

fastened by two small rivets and entirely lacking in the characteristics of a hunting knife, as indicated in the above definition.

The testimony of witnesses Colter and Friedberg stands unrefuted. Their statements, together with a physical examination of exhibits 1 and 2, satisfy us that plaintiff has made out a *prima facie* case establishing that the merchandise represented by exhibit 1 is not a hunting knife within the meaning of that term as used in paragraph 355, *supra*.

We, therefore, sustain the claim of plaintiff that the merchandise should be classified as articles wholly or in chief value of metal, of the kind made dutiable at the rate of 22½ per centum ad valorem in paragraph 397 of the Tariff Act of 1930, as modified, *supra*.

Judgment will issue accordingly.