No. 65737.—Paul E. Sernau, Inc. *v.* United States, protest 58/13458 (New York).

FORD, Judge: This suit is directed against the classification by the collector of customs of certain imported merchandise invoiced as "Toy pocket knives," under the provisions of paragraph 354[1] of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as made effective by T.D. 52820, providing for pocketknives with folding blades, and the assessment of duty at the rate of five-eighths of 1 cent each and 25 per centum ad valorem.

The primary claim of plaintiff herein is that said merchandise is properly dutiable at 21 per centum ad valorem, under the provisions of paragraph 397[2] of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as manufactures of iron or steel, not specially provided for; or, in the alternative, at 35 per centum ad valorem under paragraph 1513[3] of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as toys, other.

The record in this case consists of the testimony of two witnesses and three exhibits. Plaintiff's exhibit 1 is a sample of the imported merchandise. Plaintiff's collective illustrative exhibit 2 consists of a card upon which a customer of plaintiff herein, the St. Marks Specialty Co., Inc., offers articles, such as exhibit 1, for sale. Plaintiff's collective illustrative exhibit 3 consists of a number of key-chain charms.

Mr. Jerome Collender, treasurer, vice president, and buyer of plaintiff, was called to testify on behalf of plaintiff. The witness testified that the business of plaintiff is dealing in toys, novelties, and general merchandise as an import broker; that the merchandise is purchased for the account of its customers and delivered directly to said customers; that he is familiar with the merchandise before the court, which he purchased while in Japan in 1956; that he has been to Japan six times and is familiar with the type of manufacturer who produces the involved merchandise; that they are small manufacturers and not recognized

---

[1] Penknives, pocketknives * * * and all knives by whatever name known * * * which have folding or other than fixed blades or attachments, valued—

Not over 40 cents per dozen_____ ⅝¢ each, and 25% ad val.

[2] Articles or wares not specially provided for * * *:

    *       *       *       *       *       *       *

    Composed wholly or in chief value of iron, steel * * *:

        Other * * *_____ 21% ad. val.

[3] Toys, not specially provided for:

    *       *       *       *       *       *       *

    Other * * *_____ 35% ad val.

manufacturers of cutlery; that the involved merchandise, described on the invoice as toy pocketknives, one and one-eighth of an inch long, comes in three assorted colors, and the purchase price is $1.04 per gross, ex-factory. Mr. Collender further testified that this merchandise is sold to novelty people in its condition as imported under the designation of key-chain novelties; that St. Marks Specialty Co., Inc., purchases stubstantial quantities of merchandise such as exhibit 1; that he is personally familiar with the use of articles such as exhibit 1 and has seen them used many times in different parts of the country; that he has never seen items such as exhibit 1 used for cutting purposes or as a cutting instrument and has never tried to cut anything, himself, with an item such as exhibit 1; that he has always seen exhibit 1 used as a charm for a key chain.

Mr. Harry G. Morrow was next called as a witness on behalf of plaintiff. Mr. Morrow testified that he is president of St. Marks Specialty Co., Inc., whose business is to deal in novelties; that his company sells several million key-chain charms a year and that he has been handling this type of merchandise for over 15 years, having handled hundreds of thousands of them on a national distribution basis; that they have a key chain for articles such as exhibit 1 and place them on a card such as plaintiff's collective illustrative exhibit 2; that this merchandise is sold to novelty and toy jobbers as key-chain charms; that his firm has dealt in cutlery but that items such as exhibit 1 have never been sold to cutlery houses.

The witness then testified that he has seen articles such as exhibit 1 many times and in many places used as a key-chain charm; that he has personally tried without success to sharpen a pencil with an item such as exhibit 1; that, in his opinion, exhibit 1 was not a cutting instrument but a novelty charm having no practical use as a knife.

Based upon the record as made herein, plaintiff contends that the involved merchandise is not properly classifiable under paragraph 354 of the Tariff Act of 1930, as modified, *supra*. The brief filed on behalf of plaintiff sets forth a number of dictionary and other lexicographic definitions of the terms "knife" and "cutlery." Without setting forth said definitions, it is interesting to note that all of the definitions require either that the article be a cutting instrument or have a blade with a sharp edge for cutting.

An examination of exhibit 1 reveals the involved merchandise to be constructed in a very flimsy manner, having a very crude blade. It has ofttimes been said that a sample is a potent witness. *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Bernard, Judae & Co.*, 18 C.C.P.A. (Customs) 68, T.D. 44029; *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T.D. 43090; *M. Pressner & Co.* v. *United States*, 44 Cust. Ct. 10, C.D. 2145. The sample in the instant case is indeed a potent witness, which clearly evidences the fact that the imported merchandise, although in the form of a knife, by virtue of its construction, does not have the attributes of a knife.

Defendant contends the phrase "by whatever name known," contained in paragraph 354, *supra*, precludes classification elsewhere. It must be borne in mind that for the above clause to be effective, the involved article must, in fact, be a knife.

The case of *M. Pressner & Co.*, *supra*, involved a similarly inexpensive and flimsily constructed miniature hunting knife which was not used for hunting but given away at carnivals and circuses as a souvenir. The court, in that case, held that the merchandise involved therein was not a hunting knife, as that term is used in paragraph 355 of the Tariff Act of 1930, and found it to be properly classifiable under the provisions of paragraph 397 of the Tariff Act of 1930.

The merchandise in the case at bar is likewise an inexpensive, flimsily constructed article, which we do not feel falls within the purview of paragraph 354, *supra*.

In an old case, involving merchandise in the form of a miniature penknife, about 1 inch long and provided with a loop, the collector of customs classified the merchandise as jewelry. Our predecessor, the Board of General Appraisers, held the involved merchandise to be properly dutiable under paragraph 193 of the Tariff Act of 1897, which is the forerunner of paragraph 397 of the Tariff Act of 1930. The board also found that said merchandise was not a pen or pocketknife, nor toy, nor jewelry. *A. Strauss & Co.* v. *United States*, 11 Treas. Dec. 47, T.D. 26996.

In a more recent case, *Crystal Craft, Inc.* v. *United States*, 37 Cust. Ct. 368, Abstract 60247, certain miniature knives were classified by the collector as articles, designed to be worn on apparel or carried on or about or attached to the person, under the provisions of paragraph 1527(c)(2) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, supplemented by T.D. 51898. The merchandise therein was claimed to be properly dutiable under paragraph 354 of the Tariff Act of 1930, as modified, *supra*. The court, in that case, held the merchandise to be properly dutiable as claimed, based upon the record as made, which established that the involved miniature knives were used to "sharpen pencils, scrape out a pipe bowl, cut string, cut the end of a cigar."

The record in the case at bar establishes that the involved merchandise cannot sharpen a pencil and neither of the witnesses has ever seen the involved merchandise used for cutting purposes. Accordingly, aside from the difference in the involved paragraphs, the record herein distinguishes the two cases, and we do not believe the *Crystal Craft* case, *supra*, to be controlling.

The alternative contention of plaintiff that said merchandise is properly dutiable under the provisions of paragraph 1513 of the Tariff Act of 1930, as modified, *supra*, as "toys" is not supported by the record. Accordingly, said claim is overruled.

In view of the foregoing and accepting the stipulation of the parties involved that the subject merchandise is in chief value of iron or steel, we find that the proper classification is under paragraph 397 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiff herein.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled.

Judgment will be rendered accordingly.